UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>                                                         )<br>                                                         )<br>                                                         )<br>          v.                                             )<br>                                                         )<br> KEYON TAYLOR,                              )<br>                                                         )<br>          Defendant.                             ) | Criminal No. 14-10075-DJC |

GOVERNMENT'S OMNIBUS OPPOSITION
TO DEFENDANT'S MOTIONS IN LIMINE

The United States hereby opposes defendant Keyon Taylor's various motions in limine. As the Court will see, the government is opposing only certain of the motions and, at most, reserving its rights as regards the other motions.

### A. MOTION IN LIMINE TO EXCLUDE ANY REFERENCE OR EVIDENCE AS TO THE CAUSE OF A CUT ON HIS LEFT HAND (docket # 108)

Keyon Taylor left his blood, and a large piece of purple nitrile glove, on the top of a chain link fence in a flight path leading away from the U.S. Postal truck where the victim was shot. Taylor also left his blood on a second chain link fence and on the handle of a blue recycling bin, both of which were further along the flight path established by clear boot prints in the snow and, as to its origin and general direction, by eyewitness testimony. In the recycling bin were the victim's postal pants, vest, keys, and cell phone. The pants and vest had the victim's blood on them; however, the vest also had Taylor's blood on it.

Clearly, the manner in which Taylor's blood came to be in these locations is of critical importance. Taylor attempts to limit the government's proof in this regard by his overbroad motion.

The government does not intend, nor is it required to, offer expert testimony as to the cause of the injury under FRE 702. Instead, the government intends to offer lay testimony regarding the observed nature of the wound. "Rule 701 requires that lay witness opinion testimony need only be rationally based on perception and helpful to a determination of a fact in issue. Personal knowledge or perceptions based on experience is a sufficient foundation for such testimony," *In re Air Crash at Little Rock Arkansas*, 291 F.3d 503 (8th Cir. 2002). "A plaintiff need not present expert testimony where special expertise is not required to enable a jury to make a causal inference." *Claar v. Burlington Northern Railroad Co.*, 29 F.3d 499, 504 (9th Cir.1994) ( citing *Gallick v. Baltimore & O.R., Co.*, 372 U.S. 108 (1963), and *Lavender v. Kurn*, 327 U.S. 645 (1946)).

It is clear that a lay person may make observations regarding the nature of an injury the witness directly observed. See *Jackson-Flavius v. People,* 2012 WL 6628316 (V.I., 2012). *See also Batiste v. City of Beaumont,* 426 F.Supp.2d 395, 403 (E.D.Tex.2006) ("[A] lay person is competent to testify concerning physical injuries and conditions that are susceptible to observation by an ordinary person. Burns, bruises and topical lacerations are not of the character as to require skilled and professional persons to determine the cause and extent thereof."). Here, Postal Inspector Michael Connelly personally observed the wound to Taylor's hand and photographed it less than a week after the shooting.[1] His description of that wound as a "puncture" will merely be testimony based upon the direct observation of defendant's wounds.

---

[1] Inspector Connelly was an emergency medical technician for a number of years before becoming a Postal Inspector; he clearly has sufficient experience to opine that Taylor's wound appeared to be a puncture wound but the government does not intend to offer his observations as expert testimony. Of course, lay opinion testimony that involves some degree of specialized knowledge is permissible; *see, e.g., United States v. Perkins*, 470 F.3d 150, 155-56 (4th Cir. 2006).

*See Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir.1987) ( "In some situations in which the seriousness of injury or illness would be apparent to a lay person, expert testimony would not be required, e.g., a gunshot wound" ).  Even Taylor's girlfriend, Sabria Ramsey, told the grand jury that the injury to the webbing between Taylor's thumb and index finger appeared on "[b]oth sides, like something went through."  Grand Jury Trans., 01/23/14 at p. 40-41.  "Puncture" is simply a permissible shorthand expression describing the injury.  There is nothing unfairly prejudicial about the use of this term.  *See* FRE 403.

The jury should hear this testimony; defense counsel may obviously cross-examine the witnesses as to their lack of medical training if he thinks this will help.  It is worth noting that defendant has *not* moved to exclude the photographs of Mr. Taylor's hand, so the jury will also be able to form an opinion regarding the nature of the injury from the photographs.[2]

> It is well-settled that the modern trend favors the admission of [lay] opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination.
>
> Where, as here, a lay witness's opinion testimony is based on sufficient experience or specialized knowledge and a sufficient connection exists between such knowledge and experience and the lay opinion, that opinion should be admitted because it may be fairly considered to be rationally based on the perception of the witness and truly helpful to the jury.

*Ghee v. Marten Transport, Ltd.,* 570 Fed.Appx. 228 (3rd Cir. 2014)(*citing Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1175 (3d Cir.1993) and *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1193 (3d Cir.1995))(internal citations and quotation marks omitted).  In this case,

---

[2] The government does not understand Taylor to have moved for the exclusion of the photographs of his hand themselves.  Such a motion would be an untimely motion to suppress and fruitless.  The defendant has no right to suppress the observations of the wounds to his hands under the Fourth Amendment, nor is it a violation of his privilege against self-incrimination under the Fifth Amendment for officers to observe and photograph his non-testimonial physical attributes.  *See United States v. Dionisio*, 410 U.S. 1, 5-6, 14-15 (1973).

unlike *Ghee* or *United States v. Perkins*, 472 Fed. Appx. 245 (4th Cir. 2012)(opinion of nurse as to cause of injuries improperly admitted), the anticipated testimony of Connolly and Taylor's girlfriend will not rely on *any* specialized knowledge or expertise. In a case involving lay testimony regarding the age of a bruise on a person's body, one court put it this way:

> Such injuries are common to the average adult, who during a lifetime will become familiar with bruises and cuts upon the human body. Furthermore, because of the human body's susceptibility to minor injuries, the average person is familiar with bruising and the healing process of bruises, and therefore, can form an opinion regarding the approximate age of bruises and cuts on the human body. It is simply a matter of everyday common knowledge….

*Jackson-Flavius v. People*, 2012 WL 6628316 (V.I., 2012). *See also Batiste v. City of Beaumont*, 426 F.Supp.2d at 403 (E.D.Tex.2006). Therefore, the government witnesses should be allowed to testify to their observations and to use terms like "puncture" that are grounded in common human experience of routine injuries.

**B. MOTION IN LIMINE REGARDING WARRANTS AND PROBATION OFFICER CONTACT (DOCKET # 109)**

Defendant has moved to exclude all references to his being arrested on an outstanding warrant, prior to his arrest in connection with these charges, and to his meeting with his probation officer on the day of the shooting. The problem posed by eliminating all references to these facts is that the chronology of events leading up to the shooting involves Taylor, his girlfriend Sabria Ramsey, and co-defendant Maurice Gittens being together in the U-Haul van all day until Gittens and Taylor dropped Ramsey off at 5:30 p.m. in Dorchester - just 30 minutes before the shooting.

The government may need to call the probation officer to resolve factual conflicts regarding the timing and/or to verify their presence in Fall River in the event that Sabria Ramsey

does not testify in a manner consistent with her prior grand jury testimony.[3] Ramsey testified before the grand jury that she and Gittens accompanied Taylor to Fall River on December 20, 2013, so that Taylor could meet with his probation officer. Ramsey claimed that the three of them were at the courthouse from noon until approximately 4:00 p.m. Taylor's probation officer, Joanne Martin, informed investigators that Taylor arrived at the courthouse on December 20th with two males and one female. Taylor identified the female as being his sister. Martin said they met very briefly in the courthouse hallway either right before or right after lunch. Martin stated that Taylor appeared in court to remove a default warrant prior to meeting with her. Martin stated that Taylor left the courthouse right after their meeting. The robbery and shooting occurred at approximately 6:00 p.m. that evening. In short, the probation officer visit is too intertwined with the facts of what occurred on the day of the shooting to extract the event itself; it is, however, subject to reasonable limitation.

The majority of circuit courts facing this issue have adopted a case-by-case approach as to whether it is appropriate to identify a probation officer as such. *See, e.g., United States v. Allums,* 379 Fed. Appx. 711, 716-717 (10th Cir. 2010) (noting that Fourth, Fifth, Eighth, Ninth and Tenth circuits have all rejected a *per se* approach that would automatically exclude probation officer testimony). The Court could allow the probation officer and Ramsey to testify as to the meeting and Martin's position but give a limiting instruction to the jury that the fact that defendant has a probation officer has no bearing on his guilt in the present crime and that persons can have probation officers for a variety of offenses, and it is not for the jury to speculate as to

---

[3] Ramsey has admitted to testifying falsely the first time she appeared before the grand jury and is likely to have provided false testimony during her second appearance as well. It is not unlikely, therefore, that the government will have to call other witnesses such as the probation officer in the event Ms. Ramsey has additional inconsistencies.

what offense gave rise to Taylor's situation. In the alternative, the Court could instruct both witnesses outside the presence of the jury to refrain from describing Ms. Martin's employment as "probation officer" and to omit the purpose of the meeting.

Similarly, the jury should not speculate as to why agents were present at Taylor's mother's apartment in Attleboro on December 26, 2013, and how they came to take photographs of his hands that date. Taylor and his brother, Kevaun, were arrested on outstanding default warrants in their mother's apartment in Attleboro on December 26, 2013.[4] The observations and photographs of the puncture wound to Taylor's hand were made that same day. An identification card belonging to Gittens was found on Taylor. Taylor was subsequently released. On January 27, 2014, Taylor was arrested in the present case pursuant to a warrant issued by the federal court.

The risk in sanitizing the record of any mention of Taylor's arrest on December 26, 2013, is that the jury may speculate that law enforcement acted impermissibly and in a heavy-handed fashion in entering the apartment, photographing Taylor's hands, and taking an identification belonging to Gittens from him. Surely, the jury needs to know when the photographs were taken and when the officers observed the wound to his hand (less than one week after the assault ) in light of the trail of blood left at the scene. A strong cautionary instruction to the jury that they are not to speculate as to the reason for the arrest and not to consider it in determining guilt or innocence in this case should suffice.

---

[4] Taylor's mother, Kendra, arrived at the apartment later in the day and consented to a search of the premises as well as a closet just outside the rear door to the apartment. Investigators found a black jacket inside that closet that had the victim's blood on its right sleeve.

In the alternative, so long as he does not object to the photographs of his hand coming into evidence, and to the testimony from law enforcement officers who were present at the time regarding their observations of the wound, the Court could instruct government witnesses to refrain from referring to an arrest on an outstanding warrant, but use the term "lawfully detained" instead.[5]  The government, however, should be permitted to disclose to the jury that Taylor's brother, Kevaun, was arrested in the apartment on December 26, 2013, in order to further explain why the agents and officers were present inside the apartment that day.[6]

### C. MOTION IN LIMINE REGARDING OVERVIEW TESTIMONY (docket # 110)

The government does not intend to offer overview testimony as it understands defendant's use of that term.  It reserves the right to have its case agent testify to facts which he observed and to his actions as the lead investigator, however.

### D. MOTION IN LIMINE REGARDING CODIS DNA DATA (docket # 111)

The government does not intend to offer evidence that Taylor 's DNA, as represented in the CODIS database, matched the DNA found on certain pieces of evidence and at the crime scene.  Instead, the government will refer to the DNA sample taken directly from Taylor.

---

[5] The attorneys have attempted to resolve this issue.  The government proposed allowing the witnesses to testify that the defendant was arrested on December 26, 2013, but refrain from disclosing his subsequent arrest on January 27, 2014, on the federal warrant.  Defense counsel, however, wishes to introduce evidence of how the defendant was dressed on January 27th (a black jacket and sneakers).

[6] The government reserves the right to admit the fact that Taylor was arrested on an outstanding warrant if the defendant, through counsel, were to suggest through cross-examination that the observations and photographs of his hands were illegal or otherwise tainted.  The prosecution would alert the Court at sidebar before doing so.

### E.  MOTION IN LIMINE TO EXCLUDE ANY REFERENCE TO, OR EVIDENCE OF, GANG AFFILIATION (docket # 112)

The government does not intend to offer evidence of Keyon Taylor's association with the Corbet Street gang, or make any reference to any gang affiliation as a basis for his knowledge of, and association with, coconspirators Maurice Gittens and Kemron Roache.

In the event that defendant Keyon Taylor takes the witness stand, the government reserves its right to use his gang affiliation in cross-examination if he testifies in a manner which contradicts such affiliation (i.e., "I have had nothing to do with any gangs") or which makes assertions which can only be refuted through evidence of such affiliation (i.e., "I don't know Kemron Roache and don't hang out with him").[7]  Of course, counsel will seek a ruling from the Court at sidebar or outside the presence of the jury if this comes up.

                                                  Respectfully submitted,

                                                  CARMEN M. ORTIZ
                                                  United States Attorney

                                                  */s/Thomas E. Kanwit*
                                                  WILLIAM F. BLOOMER
                                                  THOMAS E. KANWIT
                                                  Assistant United States Attorney
                                                  617-748-3100

---

[7] These illustrations are not intended to be exhaustive of the possible statements as to which evidence of gang affiliation would be fair rebuttal or cross-examination.

CERTIFICATE OF SERVICE

Suffolk, ss.                                                          Boston, Massachusetts
                                                                      February 26, 2015

      I, Thomas E. Kanwit, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants this date via US Postal Service, postage prepaid.

                                                  *Thomas E. Kanwit*
                                                  THOMAS E. KANWIT
                                                  Assistant U.S. Attorney

Date: February 26, 2015